# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-KA-00734-SCT

*FRED RAGIN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/28/97 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | PRENTISS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS H. COMER, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | JOHN R. YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/17/1998 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/7/99 |

**BEFORE PITTMAN, P.J., SMITH AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. On March 11, 19 96, Booneville Police Department officers working in cooperation with the North Mississippi Narcotics Task Force and confidential informant Patrick McGee purchased "crack cocaine" on two separate occasions from Frederick Ragin. Each sale occurred at a private residence located within 1500 feet of an elementary school.

¶2. Ragin was indicted in the Circuit Court of Prentiss County on two counts of the sale of a Schedule II controlled substance within 1500 feet of an elementary school in violation of Miss. Code Ann. § 41-29-142(1). On February 26, 1997 a jury convicted Ragin on both counts. As to Count I, Ragin was sentenced to serve thirty (30) years in the Mississippi Department of Corrections with fifteen (15) years suspended and an additional $1,000.00 fine. As to Count II, Ragin was sentenced to serve thirty (30) years in the Mississippi Department of Corrections with fifteen (15) years suspended. The sentences are to run

concurrently. The lower court denied Ragin's motion for a new trial and/or judgment for acquittal notwithstanding the verdict. Aggrieved, Ragin assigns the following issues for review by this Court:

> **I. WHETHER THE LOWER COURT ERRED IN ADMITTING INTO EVIDENCE TWO AUDIO TAPES AND CORRESPONDING TRANSCRIPTS OF THE ALLEGED NARCOTICS SALE.**
>
> **II. WHETHER THE LOWER COURT ERRED IN DENYING RAGIN'S MOTION FOR MISTRIAL FOLLOWING THE TESTIMONY OF SHERIFF LEWIS TYNES.**
>
> **III. WHETHER THE LOWER COURT ERRED IN ALLOWING INTO EVIDENCE TESTIMONY CONTAINING AN INCRIMINATING STATEMENT MADE BY RAGIN SUBSEQUENT TO HIS ARREST.**
>
> **IV. WHETHER THE LOWER COURT ERRED IN DENYING JURY INSTRUCTIONS D-4, D-5, D-6, D-7, AND D-9.**

## DISCUSSION OF THE ISSUES

### I. THE LOWER COURT DID NOT ERR IN ADMITTING TWO AUDIO TAPES AND CORRESPONDING TRANSCRIPTS CONCERNING THE NARCOTICS SALE.

¶3. We have announced that the prosecution must prove the recordings are relevant pursuant to Miss. R. Evid. 401 as well as authentic as required by Miss. R. Evid. 901 before they are deemed admissible.

¶4. In ***Middlebrook v. State***, 555 So. 2d 1009 (Miss. 1990) we held the prosecution is required to lay a substantial predicate before a tape recording may be received into evidence. First, the recording must pass the relevancy test of Rule 401; i.e., it must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Miss. R. Evid. 401. As stated in ***Middlebrook***, "[t]he mere fact that portions of such a recording are inaudible does not render it per se inadmissible.[1] The question is whether what can be heard has probative value within Rule 401." ***Middlebrook***, 555 So. 2d at 1012. Upon listening to the recordings at issue, we found the recordings mildly discernable. However, when accompanied by the transcript outlining the conversation, it is clear that the recordings at least provide the name of the defendant which is probative of whether Fred Ragin was involved in the sale of narcotics.

¶5. In ***Stromas v. State***, we considered the admissibility of tape recordings depicting an alleged sale of cocaine very similar to that in the instant case. Regarding relevancy, Chief Justice Prather stated:

> Certainly a tape recording of the alleged drug transaction is relevant. *See Miss. R. Evid. 401*. The tape's admission makes the drug transaction more likely to have taken place. *See **Butler** [**v. State**]*, 592 So. 2d [983], 984 [(Miss. 1991)].

***Stromas v. State***, 618 So. 2d 116 (Miss. 1993). Accordingly, we find the tape recordings in the present case relevant under Rule 401 of the Mississippi Rules of Evidence.

¶6. As an additional condition precedent to admissibility, the recording must be proven authentic pursuant to Miss. R. Evid. 901. Rule 901 is satisfied if evidence is introduced which is "sufficient to support a finding

that the matter in question is what its proponent claims." Officer Mike Foreman is a surveillance agent who operated the recording equipment on the night in question. During trial, Officer Foreman testified that the tape recording accurately depicts what occurred on the night of March 11, 1996 and that he personally participated in the preparation of the accompanying transcript. Officer Foreman further testified that the tapes had been in his custody since that night. This testimony sufficiently authenticates the tape recordings offered by the prosecution.

¶7. Whether the evidence presented satisfies Rules 401 and 901 of the Mississippi Rules of Evidence is a matter left to the discretion of the trial judge. Miss. R. Evid. 104(a). His decision will be upheld unless it can be shown that he abused his discretion. *Stromas*, 618 So. 2d at 119 (*citing **Butler***, 592 So. 2d at 986).

¶8. Ragin argues that while a tape recording of an alleged drug transaction is clearly relevant, the recordings in the present case are inadmissible under Miss. R. Evid. 403 due to the poor sound quality of the tapes. Rule 403 allows the trial judge to exclude evidence deemed relevant under Rule 401 if the probative value of such evidence is substantially outweighed by the danger of unfair prejudice. The tape recordings in the present case were not sufficiently prejudicial to warrant the exclusion of relevant evidence. Moreover, the tapes do not offend the remaining safeguards contained in Rule 403[2]. Since the prosecution met its burden concerning admissibility and no abuse of discretion has been shown in this case, the judgment of the trial judge was without error.

## II. THE LOWER COURT DID NOT ERR IN DENYING RAGIN'S MOTION FOR MISTRIAL FOLLOWING THE TESTIMONY OF SHERIFF LEWIS TYNES.

¶9. While transporting Ragin from the Prentiss County Detention Center to the courthouse, Deputy Sheriff Lewis Tynes of the Prentiss County Sheriff's Department spoke to Ragin concerning the plea bargain which Ragin had previously been offered. During their discussion, Ragin stated he would not accept the plea bargain because he had not sold the drugs to a narcotics agent but rather had sold them to Patrick McGee, the confidential informant who was working for the police department and Narcotics Task Force.

¶10. During voir dire of Sheriff Tynes outside the presence of the jury, Sheriff Tynes testified as to this conversation and acknowledged the information was not solicited by him in any way. Following the voir dire, the trial judge agreed to allow the State to question Sheriff Tynes at trial regarding Ragin's admission, but warned that there should be no testimony as to plea negotiations elicited from the witness.

¶11. On direct examination before the jury, the following dialogue occurred as the prosecution questioned Sheriff Tynes:

Q: The defendant was discussing these charges; is that correct?

A: Yes, sir.

Q: Would you tell the jury exactly what the defendant said in regards to the charges that are pending against him?

A: He said that he didn't sell no drugs to no undercover agent, he sold them to Patrick McGee.

Q: And the best as you recall, that's exactly what he said?

A: Yes, sir.

Q: Did he say that to you how many times?

A: About twice.

Q: And the second time, would you tell us what you recall him saying?

A: He just said that he was just  see, how would you put it? He was discussing what they had offered --

Q: Just tell us what he said.

¶12. Counsel for defense then moved for a mistrial, at which time the trial judge dismissed the jury from the courtroom. The judge denied the motion for mistrial and directed the prosecution to caution Sheriff Tynes against any further reference to a plea bargain. When the jury returned to the courtroom, the trial judge provided the following limiting instruction:

> Ladies and gentlemen of the jury, immediately before you were sent to the jury room, there was an objection motion. I have sustained the objection as to the content of the response made by the witness and I now instruct you that you are to disregard the last comment made by this witness during his testimony.

Ragin argues that once the jury learned of his plea discussions, it prejudiced the jurors against him and caused them to consider improper information in their deliberations.

¶13. This Court has repeatedly held that the granting of a motion for a mistrial is within the sound discretion of the trial judge. *Hoops v. State*, 681 So. 2d 521, 528 (Miss. 1996)(*citing Bass v. State*, 597 So. 2d 182, 191 (Miss. 1992); *Ladner v. State*, 584 So. 2d 743, 753 (Miss. 1991)). "'[I]f the inadmissible testimony is so damaging that its effect upon the jury could not be adequately tempered by admonition or instruction, the trial court should grant a mistrial.'" *Hoops*, 681 So. 2d at 528 (*quoting Baine v. State*, 604 So. 2d 249, 257 (Miss. 1992)). However, "where 'serious and irreparable damage' has not resulted, the judge should 'admonish the jury then and there to disregard the impropriety.'" *Perkins v. State*, 600 So. 2d 938, 941 (Miss. 1992)(*quoting Roundtree v. State*, 568 So. 2d 1173, 1178 (Miss. 1990)). A jury is presumed to follow the instructions of the trial judge. *Hoops* 681 So. 2d at 529, *Cabello v. State*, 490 So. 2d 852, 857(Miss. 1986).

¶14. In *Hoops*, a testifying witness unexpectedly referred to prior aggravated assaults committed by the defendant. The trial judge denied defense counsel's motion for a mistrial and instructed the jury to disregard the prejudicial statement. No error was found by this Court.

¶15. The instant case concerns a statement by a witness which could have been construed by the jury in many ways. It is unlikely that the average juror would deduce that the partial remark made by Sheriff Tynes actually referred to a plea bargaining agreement. The unintended statement by the witness in *Hoops* was far more prejudicial than the statement by Sheriff Tynes, but the limiting instruction to the jury in *Hoops* was found sufficient to remedy the possible prejudicial effect. The testimony in the present case, although improper, did not irreparably damage Ragin's right to a fair trial. In light of the broad discretion allowed to the trial judge in considering a motion for mistrial, the insignificance of the statement as compared to similar case law, and the limiting instruction promptly provided by the trial judge, we find no error in the denial of

defense counsel's motion for mistrial.

### III. THE LOWER COURT DID NOT ERR IN ALLOWING INTO EVIDENCE WITNESS TESTIMONY CONTAINING AN INCRIMINATING STATEMENT MADE BY RAGIN SUBSEQUENT TO HIS ARREST.

¶16. During pre-trial voir dire of Investigator David Austin, Austin testified that during the time he was processing the paperwork pursuant to Ragin's arrest at the police station, Ragin made remarks to Austin indicating he was quite angry about his arrest due to his previous work as a confidential informant. Officer Austin replied that Ragin's previous work with the police department did not give him the right to sell crack cocaine. Ragin then stated that he just smoked crack but did not sell it and that he was merely "helping them guys out". Counsel for defense objected to the admissibility of these statements by Ragin. Finding the statements were voluntarily given, the lower court overruled the objection.

¶ 17. Ragin asserts the statements were inadmissible as the product of an "indirect interrogation" by Investigator Austin. Further, Ragin claims the statements were irrelevant pursuant to Miss. R. Evid. 401 because the fact that Ragin smoked crack cocaine does not have a tendency to make the existence of the alleged sale more or less probable than it would have been without the evidence.

¶ 18. As to the voluntariness of Ragin's statements, Investigator Austin testified during voir dire and at trial that he had informed Ragin of his *Miranda* rights[3] prior to the time the statements were made. Austin repeatedly testified that no interrogation of Ragin took place at the police station. In fact, Ragin gave no formal statement to the police and had refused to sign a waiver of rights form.

¶ 19. Relying on applicable case law, we find no error in the lower court's ruling that Ragin's statement was voluntarily made and as such was admissible during trial. In *Pierre v. State*, this Court upheld the applicable standard of review regarding the voluntariness of a statement:

> The trial court's finding of voluntariness will not be reversed by this Court unless the trial court committed manifest error or made its decision contrary to the overwhelming weight of the evidence. *Chisolm v. State*, 529 So. 2d 630, 634 (Miss. 1988); *Frost v. State*, 483 So. 2d 1345, 1350 (Miss. 1986); *Gavin v. State*, 473 So. 2d 952, 955 (Miss. 1985). In its determination, the trial court must look to the state to prove the necessary facts beyond a reasonable doubt. *Gavin*, 473 So. 2d at 954; *see also Chisolm*, 529 So. 2d at 634; *Neal v. State*, 451 So. 2d 743 (Miss. 1984), *cert. denied*, *Neal v. Mississippi*, 469 U.S. 1098, 105 S.Ct.607, 83 L.Ed.2d 716.

*Pierre v. State*, 607 So. 2d 43, 50 (Miss. 1992).

¶ 20. During voir dire of Investigator Austin, the State inquired as to whether Austin had ever asked Ragin if he had sold crack cocaine. Austin answered "no" and asserted that Ragin had spoken voluntarily. At trial, the State asked Austin if Ragin was responding to a question at the time the incriminating statements were spoken. Austin replied that he did not recall making any specific statements to Ragin and that he was not interrogating Ragin at the time the statements were made. The trial judge was provided with ample testimony indicating Ragin's statements were voluntarily made, thus the State met its burden of proof concerning this issue. There was no error in the trial court's ruling.

¶ 21. Furthermore, the statements are relevant according to Rule 401 of the Mississippi Rules of Evidence. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be without the evidence." Miss. R. Evid. 401. Ragin told Investigator Austin that he was merely "helping the guy out." Although Ragin may not regularly sell crack cocaine, his statement indicates that he took *some* action on the night in question to help *someone* out. Whether Ragin sold crack cocaine is a fact of consequence in the present case, and Ragin's statement that he helped someone out makes this fact more probable than it would be without the statement. Therefore, the trial judge was correct in allowing the testimony into evidence.

### IV. THE LOWER COURT DID NOT ERR IN DENYING JURY INSTRUCTIONS D-4, D-5, D-6, D-7, AND D-9.

¶ 22. Although defense counsel now claims the denial of these instructions amounts to reversible error, counsel failed to object at the trial level to the denial of any instruction by the trial judge which procedurally bars this issue on appeal. *Nicholson ex rel. Gallott v. State*, 672 So. 2d 744, 752 (Miss. 1996)(*citing Lockett v. State*, 517 So. 2d 1317, 1332-33 (Miss. 1987), *cert. denied*, 487 U.S. 1210 (1988)).

¶ 23. Even if counsel had objected at the trial level thereby preserving this issue for appeal, we still find no error in excluding these instructions. First, the defense argues Instruction D-4 was erroneously interpreted to define reasonable doubt, and as such was wrongly excluded. However, we find that Instruction D-4 did provide a definition of reasonable doubt, and since the jury was informed of the "beyond a reasonable doubt" standard through Instruction C-2, there was no error by the court. *See Reynolds v. State*, 585 So. 2d. 753 (Miss. 1991).

¶ 24. Defense counsel next contends the rejection of Instruction D-5 was erroneous because Instruction D-5 "addressed the fundamental presumption afforded to every criminal defendant and was not adequately addressed by the trial court's other instructions." However, the first sentence of Instruction C-2, which was presented to the jury, certainly addresses the presumption of innocence: "The law presumes every person charged with the commission of a crime to be innocent." The trial judge is under no duty to provide the jury with cumulative instructions; thus, Instruction D-5 was properly rejected. *Hull v. State*, 687 So. 2d 708, 722 (Miss. 1996).

¶ 25. The trial judge additionally rejected Instruction D-6 arguing it duplicated previously accepted instructions. Instruction D-6 focused on the fact that the jury was not to consider any factors other than those witnessed by it during the course of trial. But, Instruction C-1 which read "Your verdict should be based on the evidence and the law and not upon speculation, guesswork or conjecture" had previously been accepted by the trial court. Therefore, Instruction D-6 was cumulative and was properly rejected. *Hull*, 687 So. 2d at 722.

¶ 26. The judge rejected Instruction D-7 after determining it was inapplicable to the facts of the present case. On appeal, defense counsel claims the instruction was applicable but provides no support for his position. Since the instruction seems to address the presumption of innocence yet again, we find Instruction D-7 was properly denied. *Id.*

¶ 27.Finally, it is argued by the defense that the trial court committed an egregious error in refusing to allow Instruction D-9 which instructed the jury as to the lesser included offense of simple possession of cocaine. This argument is without merit. In *Reynolds v. State*, we noted ". . . the mere fact that one must possess a controlled substance before they can sell it is not enough to require a lesser included offense instruction."

*Reynolds v. State*, 658 So. 2d 852, 856 (Miss. 1995)(*citing Stephens v. State*, 592 So. 2d 990 (Miss. 1991)). Because there is no support in the record for a lesser included offense instruction, Instruction D-9 was properly denied.

¶ 28. "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Collins v. State*, 691 So. 2d 918, 922 (Miss. 1997)(*quoting Hickombottom v. State*, 409 So. 2d 1337, 1339 (Miss. 1982)). Having reviewed the instructions presented to the jury in the present case, we conclude there is no error pertaining to this issue.

## CONCLUSION

¶ 29. There being no reversible error committed by the trial judge, we affirm the jury verdict and sentence imposed in the lower court. Further, the lower court's denial of Ragin's motion for a new trial and/or judgment of acquittal notwithstanding the verdict was proper.

¶ 30.**COUNT I: CONVICTION OF SALE OF CRACK COCAINE WITHIN 1500 FEET OF SCHOOL AND SENTENCE OF THIRTY (30) YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIFTEEN (15) YEARS SUSPENDED PROVIDED APPELLANT VIOLATES NO CITY, COUNTY, STATE, OR FEDERAL LAWS, PAYMENT OF A $1,000.00 FINE, AFFIRMED. COUNT II: CONVICTION OF SALE OF CRACK COCAINE WITHIN 1500 FEET OF SCHOOL AND SENTENCE OF THIRTY (30) YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIFTEEN (15) YEARS SUSPENDED PROVIDED APPELLANT VIOLATES NO CITY, COUNTY, STATE, OR FEDERAL LAWS, PAYMENT OF A $1000.00 FINE, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONCURRENTLY WITH SENTENCE IN COUNT I.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**

1. *See* 3 Wharton's Criminal Evidence 693-98 (14th Ed. 1987); Annotation, Omission or Inaudibility of Portions of Sound Recordings as Affecting its Admissibility in Evidence, 57 A.L.R.3d 746 (1974).

2. The remaining safeguards provided by Rule 403 include: confusion of the issues, misleading the jury, undue delay, waste of time, and needless presentation of cumulative evidence.

3. *Miranda v. Arizona*, 384 U.S. 436 (1966).